**In re Juanita EWING, Debtor.**

**Bankruptcy No. 8300216.**

United States Bankruptcy Court,
D. Rhode Island.

May 4, 1984.

Russell Raskin, Providence, R.I., for debtor.

Robert Suglia, McKenna, Greenwood & Feinstein, Providence, R.I., for movant Mercedes Messier.

### DECISION GRANTING MOTION FOR RELIEF FROM STAY TO RECLAIM PROPERTY

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on April 9, 1984, on Mercedes Messier's motion for relief from the automatic stay (11 U.S.C. § 362) to reclaim various appliances. At issue is the ownership of said appliances.

The parties agree that in 1980 when Messier changed her residence, relocating from a house to a furnished apartment, Juanita Ewing, then Messier's friend, agreed to store Messier's refrigerator, stove, washer, and clothes dryer. Messier did not object when Ewing took the appliances with her, and began using them, when Ewing changed her own residence in 1981. As Messier put it, "one hand fed the other"— Ewing was storing the appliances, and Messier did not object to her friend's making use of them.

This arrangement continued until approximately October 1982, when Messier informed Ewing that she had received an offer from a neighbor to buy the appliances in question. Ewing then expressed an interest in purchasing the appliances. From this point on there is little agreement in the testimony of the parties.[1] Messier testified that she would have been willing to sell the appliances to Ewing for $975, to be paid in

---

1. This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rules 9014 and 7052.

**60**

monthly installments of $100, but did not see how Ewing could afford the purchase, since she was aware of Ewing's weak financial situation (for example, Ewing had recently borrowed 50 cents from Messier for bus fare).[2]

In contrast, Ewing testified that Messier sold the appliances to her for $800, payable in four monthly installments of $200 each. No payments were ever made, because within a few weeks after the alleged agreement was reached, Ewing testified that she became ill, lost time from work, and on March 23, 1983, filed her Chapter 7 petition.

██ Because of the contradictory testimony,[3] with no compelling reason to accept the testimony of one party in preference to the other, the Court concludes that the issue of burden of proof is dispositive. The burden of proof is on the party alleging the existence of a contract, *see* 29 Am. Jur.2d *Evidence* § 140 (1967)—here it is Ewing who asserts that she and Messier contracted for a sale of the appliances. Based on a close examination of the evidence, the Court concludes that Ewing has failed to demonstrate that an agreement or any meeting of minds took place. "An agreement is the manifestation of mutual assent on the part of two or more persons," *Restatement (Second) of Contracts* § 3 (1979), and no such manifestation of assent occurred.

Since Ewing has failed to meet her burden of proof,[4] the Court must find in favor of Messier. Specifically, the Court finds that at all times Messier retained ownership of the appliances in question; that Ewing agreed to store them without charge; that Messier consented to Ewing's use of some of these appliances; and that at no time did title to the items in question pass to Ewing. Accordingly, relief from the automatic stay provided by 11 U.S.C. § 362 is granted to enable movant Messier to reclaim, at her own expense, the four appliances. Because of insufficient evidence on various other allegations, including storage charges and depreciation resulting from the use of the items in question, no other costs or reimbursements are awarded.

Messier has also filed an amended complaint objecting to Ewing's discharge, but that complaint was withdrawn by Messier's attorney at a conference on April 26, 1984. That amended complaint (AP No. 840026) and the debtor's counterclaim are both DENIED.

Enter judgment accordingly.

2. The debtor signed her Chapter 7 petition on February 21, 1983 (although it was not filed until 30 days later), some four months after the discussions regarding purchasing the appliances. Ewing concedes that some of her scheduled debts were incurred prior to the October 1982 discussion with Messier, and also that she was having some trouble paying her bills in October 1982.

3. In addition to the conflicting testimony presented by Ewing and Messier, Ewing's own testimony contains some apparent contradictions. With respect to the stove, Messier's attorney asked Ewing, "That is one of the items that you offered to purchase from [Messier]?" Ewing responded, "No, she knows I do not need the stove." Subsequently, Ewing testified that she bought Messier's stove "because the total price was for everything." She then elaborated on

this response as follows: "How the stove got into it, I don't know. I don't need the stove."

Ewing also testified that she bought a new stove from Sears in 1981, although Sears is scheduled as an unsecured creditor in the amount of $512.28 for an item listed as "Stove 1982."

4. Even assuming, *arguendo*, that attorney for the debtor is correct in contending that the burden of proof is determined by the provisions of 11 U.S.C. § 362(g) (a position with which we disagree), the burden remains with Ewing. Messier is "the party requesting ... relief from the stay," § 362(g), and Ewing therefore "has the burden of proof on all ... issues" except that of equity in the property. *Id.* It is undisputed that no money changed hands, and Ewing has no equity in the subject property.